IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TYRONE FAINES,<br><br>    Movant/Defendant,<br><br>v.<br><br>UNITED STATES of AMERICA,<br><br>    Respondent/Plaintiff. | )<br>)<br>)<br>)<br>)<br>)<br>) Crim. No. 04-53-SLR<br>) Civ. No. 09-377-SLR<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

Tyrone Faines. Pro se movant.

Ilana H. Eisenstein, Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Counsel for respondent.

August 29, 2011
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Tyrone Faines ("movant") is a federal inmate currently confined at U.S.P. Canaan in Waymart, Pennsylvania. Movant filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (D.I. 78) Respondent filed a response in opposition (D.I. 84), to which movant filed a reply (D.I. 89). For the reasons discussed, the court will deny movant's § 2255 motion as time-barred without holding an evidentiary hearing.

## II. BACKGROUND

On January 14, 2004, two masked individuals robbed a branch of Sun National Bank at 1300 Market Street in Wilmington, Delaware. *United States v. Faines*, 216 F. App'x 227, 228 (3d Cir. 2007). Wilmington Police Department Officer Philip Jackson lifted seven latent fingerprints from the bank immediately following the robbery. Less than one month later, on February 3, 2004, two masked individuals robbed a branch of Artisans' Bank, also in downtown Wilmington. Surveillance cameras outside of Artisans' Bank captured pictures of the robbers' getaway car. The robberies followed a similar pattern, in which one armed individual stood guard at the bank's front, while the second individual jumped over the teller counter and collected money from bank employees. *Id.*

On February 19, 2004, Wilmington Police Department officers spotted a car that matched the getaway car. Instead of heeding the officers' signal to stop, the car's driver, later identified as movant, led police on a high speed chase, during which the passengers threw guns and clothing out of the car's windows. Police subsequently

arrested movant and inked his fingerprints and palm prints. The fingerprints matched the prints taken at the scene of the Sun National Bank robbery. In addition, evidence recovered included robbery-related items recovered from movant's car. *Id.*

A federal grand jury returned a six-count indictment on September 9, 2004, charging movant with two counts each of armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d); carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1); and conspiracy to commit bank robbery, in violation of 18 U.S.C. § 371. Counts I, II, and III related to the Sun National Branch robbery and Counts IV, V, an VI related to the Artisans' Bank robbery. *Id.*

On March 30, 2005, following a three day trial, the jury returned a guilty verdict on Counts I, II, and III (the Sun National Bank counts), but acquitted movant on the remaining three counts (the Artisans' Bank counts). The court sentenced movant on August 17, 2005 to 360 months in prison and entered its judgment of conviction on August 23, 2005. *Id.* at 229.

Movant timely appealed the conviction and sentence on August 26, 2005, asserting the following two ground for relief: (1) the court abused its discretion in limiting the expert witness testimony of movant's fingerprint expert; and (2) the court erred in its sentencing guidelines calculation. *Id.* at 229-32. After rejecting both arguments, the Third Circuit affirmed movant's conviction and sentence on February 14, 2007. *Id.* at 232.

Movant petitioned for certiorari on May 15, 2007. The United States Supreme Court denied the petition on October 1, 2007. See Faines v. United States, 552 U.S. 847 (Oct. 1, 2007).

In May 2009, movant filed the instant § 2255 motion alleging ineffective assistance of counsel and "actual innocence." The government filed an answer contending that the motion should be denied as time-barred. (D.I. 81) Movant filed a reply contending that the § 2255 motion is not untimely because he is actually innocent. (D.I. 89)

### III. DISCUSSION

#### A. One-Year Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year period of limitation on the filing of a § 2255 motion by federal prisoners. See 28 U.S.C. § 2255. The one-year limitations period begins to run from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). The one-year limitations period is subject to equitable tolling. See Holland v. Florida, \_\_ U.S. \_\_, 130 S.Ct. 2549, 2560 (2010)(equitable tolling applies in

§ 2254 proceedings); *Miller v. New Jersey State Dep't of Corr.*, 145 F.3d 616, 619 n.1 (3d Cir. 1998)(holding that one-year limitations period set forth in § 2255 is not a jurisdictional bar and is thus subject to equitable tolling).

Movant does not allege, nor can the court discern, any facts triggering the application of § 2255(f)(2) or (3). He does, however, appear to argue that the limitations period started on the date he discovered "new evidence" of his actual innocence under § 2255(f)(4). (D.I. 78 at 15). The "new evidence" consists of a letter from the FDIC dated April 9, 2007 stating that the institution at 1300 Market Street was originally established as Peoples Bank on December 19, 1952 and insured under FDIC certificate #17158. (D.I. 78-1 at 2) The letter further explains that, on January 1, 1983, Peoples Bank changed its name to Beneficial National Bank, which then became part of Household Bank FSB on June 30, 1998 and, at that point, was insured under FDIC certificate #30971. *Id.* According to the letter, Household Bank closed on January 30, 2003. *Id.* Movant contends that this letter from the FDIC constitutes "new evidence" of his "actual innocence" of the offenses for which he was convicted, because it demonstrates that the Sun National Bank branch located at 1300 Market Street was not FDIC insured in January 2004, and proof of FDIC insurance was an essential element of the three crimes for which he was convicted.

In this case, the FDIC letter does not trigger a later starting date for the limitations period under § 2255(f)(4). For example, applying the one-year limitations period to the date on the letter, April 9, 2007, results in a deadline of April 9, 2008, whereas applying the one-year limitations to the date on which movant's conviction

became final under § 2255(f)(1), October 1, 2007,[1] results in a deadline of October 1, 2008. *See United States v. Duffus*, 174 F.3d 333, 335 (3d Cir. 1999); *Wilson v. Beard*, 426 F.3d 653, 662-63 (3d Cir. 2005)(holding that Federal Rule of Civil Procedure Rule 6(a) applies to the calculation of AEDPA's one-year limitations period). Movant did not file the instant § 2255 motion until May 21, 2009,[2] more than six months after the expiration of either deadline. Therefore, the instant motion is time-barred and should be dismissed, unless equitable tolling applies.

### B. Equitable Tolling

Although the one-year limitations period may be tolled for equitable reasons, a movant can only qualify for equitable tolling by demonstrating "(1) that he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 130 S.Ct. 2549, 2562. Equitable tolling is not available where the late filing is due to a movant's excusable neglect. *Schlueter v. Varner*, 384 F.3d 69, 77 (3d Cir. 2004); *Miller*, 145 F.3d at 618-19. Consistent with

---

[1]Movant's judgment of conviction became final on October 1, 2007, the date on which the United Stats Supreme Court denied his petition for writ of certiorari. *See Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999).

[2]Pursuant to the prison mailbox rule, a pro se prisoner's habeas application is deemed filed on the date he delivers it to prison officials for mailing to the district court, not on the date the application is filed in the court. *See Houston v. Lack*, 487 U.S. 266, 275-76 (1988); *Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003); *Woods v. Kearney*, 215 F. Supp. 2d 458, 460 (D. Del. 2002)(date on petition is presumptive date of mailing and, thus, of filing). Applying this rule to the instant case, the court adopts May 21, 2009 as the date of filing because, according to the certification of mailing contained in the§ 2255 motion, that is the date movant placed the motion in the prison mailing system. (D.I. 78 at 16)

these principles, the Third Circuit has specifically limited equitable tolling of § 2255's limitations period to the following circumstances:

> (1) where the defendant actively misled the plaintiff;
> (2) where the plaintiff was in some extraordinary way prevented from asserting his rights; or
> (3) where the plaintiff timely asserted his rights mistakenly in the wrong forum.

*Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999).

Here, movant first contends that he was unable to timely file the instant motion because he was "housed at a federal prison (U.S.P. Hazleton) and remained on constant disciplinary lock-down status, thus denying him access to the law library to research his case." (D.I. 78 at 15) This argument is unavailing. A prisoner's limited access to a law library is a routine aspect of prison life, and is generally insufficient to trigger equitable tolling absent a causal relationship between the limited library access and the prisoner's late filing. *See Brown v. Shannon*, 322 F.3d 768, 773 (3d Cir. 2003)(a prisoner must demonstrate a causal relationship between the alleged extraordinary circumstances and his late filing); *Bunting v. Phelps*, 687 F. Supp. 2d 444, 448 (D. Del. 2009); *Garrick v. Vaughn*, 2003 WL 22331774, at *4 (E.D. Pa. Sept. 5, 2003)(collecting cases)("Routine aspects of prison life such as lockdowns, lack of access to legal resources, and disturbances . . . do not constitute extraordinary circumstances sufficient to equitably toll the statute of limitations."). In this case, movant's conclusory and unsubstantiated allegation regarding his limited library access does not demonstrate that the limited access **actually** prevented him from timely filing the instant § 2255 motion. For instance, claim one alleges ineffective assistance of counsel for failing to cross-examine Sun National Bank's branch manager about his

6

knowledge of the bank's FDIC insurance status. Because this alleged ineffectiveness occurred during movant's trial in 2005, which was three years prior to the expiration of the one-year filing deadline, the court fails to see how any limited library access prevented him from raising this claim in a basic pro se § 2255 motion filed by October 1, 2008. The same logic applies with respect to claim two, in which movant alleges that defense counsel failed to call an exculpatory witness at his trial. According to movant, the witness's knowledge regarding the exculpatory fingerprint evidence was "brought to his attention" on March 28, 2004, more than four years prior to expiration of the filing deadline, yet he fails to explain how his alleged limited library access prevented him from raising a claim based on this information by October 1, 2008.

Movant also contends that the court should equitably toll the limitations period pursuant to Schlup v. Delo, 513 U.S. 298 (1995), because he is actually innocent of the underlying crimes. He alleges that the FDIC letter dated April 9, 2007 demonstrates that the Sun National Bank branch he robbed was not FDIC insured. Movant has also provided a sheet from the FDIC website regarding Sun National Bank and FDIC insurance certificate number 26240. The sheet lists Sun National Bank's branch offices in existence as of June 30, 2004, but does not include 1300 Market Street. Movant appears to believe that this sheet of information provides further "proof" that the Sun National Bank branch located at 1300 Market Street on the date of the robbery was not FDIC insured. Therefore, he contends he is "actually innocent" of the three offenses for which he was convicted because the government failed to establish an essential element of those offenses.

7

As an initial matter, the court notes that it is unclear as to whether a claim of "actual innocence" can constitute a basis for equitably tolling AEDPA's limitations period. In *Schlup,* the Supreme Court explained that an actual innocence claim is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Schlup,* 513 U.S. at 315. The actual innocence doctrine has been applied to procedural defaults, but neither the Supreme Court nor the Third Circuit has held that AEDPA's statute of limitations can be equitably tolled on the basis of actual innocence, or that a movant's actual innocence constitutes an independent exception to the limitations period.[3] *See United States v. Davies,* 394 F.3d 182, 191 n.8 (3d Cir. 2005)(expressly reserving the question); *see, e.g., Horning v. Lavan,* 197 F. App'x 90, 93 (3d Cir. 2006)("we have yet to hold that the AEDPA statute of limitations can be equitably tolled on the basis of actual innocence.").

Nevertheless, even if the court were to presume that "actual innocence" can excuse a time-bar for equitable reasons, movant has failed to satisfy *Schlup*'s demanding standard. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998). To establish "actual innocence," movant must: (1) assert "new reliable evidence - whether it be exculpatory

---

[3]The circuits are split as to whether a movant's "actual innocence" may provide a basis for equitably tolling the limitations period. *See, e.g., Lee v. Lampert,* ___ F.3d ___, 2011 WL 3275947 at *2-3 & n. 6 (9th Cir. 2011)(collecting cases). The Sixth, Ninth, Tenth, and Eleventh Circuits have recognized an "equitable exception [to AEDPA's limitations period] based on a credible showing of actual innocence," *Id.* at *2, whereas the First, Fifth, and Seventh Circuits do not recognize an actual innocence exception under any circumstances. *Id.* at *2 n.6. The Eighth Circuit has left open the possibility that actual innocence could bear on a claim of equitable tolling. *Id.*

scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," *Hubbard v. Pinchak*, 378 F.3d 333,339-40 (3d Cir. 2004); and (2) prove that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327.

First, contrary to movant's assertion, the April 2007 letter from the FDIC explaining that Peoples Bank (which later became Beneficial Bank and then Household Bank) closed its branch office at 1300 Market Street does not demonstrate that Sun National Bank was not FDIC insured. Rather, as the government asserts, it merely suggests that Sun National Bank apparently opened a branch at 1300 Market Street after Peoples Bank (aka Beneficial aka Household Bank) closed its 1300 Market Street location in January 2003.[4]

Second, it is widely accepted that a bank employee's undisputed trial testimony that the bank was FDIC insured at the time of the robbery provides sufficient evidence for a reasonable jury to find that the bank was FDIC insured. *See United States v. Humbert*, 336 F. App'x 132, 135 (3d Cir. 2009)(holding that undisputed testimony by a bank employee that the bank was FDIC insured was sufficient to show that it was); *United States v. Pickar*, 616 F.3d 821, 825 (8th Cir. 2010); *United States v. Ware*, 416 F.3d 1118, 1121 n. 2 (9th Cir. 2005). In this case, the manager for the Sun National Bank branch located at 1300 Market Street testified that the deposits in Sun National Bank were FDIC insured at the time of the robbery, and this testimony was not disputed

---

[4]One of the witnesses for the prosecution, Churchman, testified that, "between Sun [National] and Beneficial," she had worked a total of 16 years at the Market Street location. (D.I. 84-2 at 42). This testimony supports the government's assertion.

9

during movant's trial. Neither the copy of information from the FDIC website regarding the **location** of Sun National Bank branches,[5] nor the April 2007 letter from the FDIC, rebuts the branch manager's testimony, because neither addresses the status of Sun National Bank's FDIC insurance.

And finally, the government has provided information from the FDIC showing that Sun National Bank, with a main office in Vineland, New Jersey, was chartered as a National Bank and has been FDIC insured since May 6, 1995 under FDIC certificate number 26240. (D.I. 84-5 at 63) Sun National Bank, Delaware, was established in December 1998, and was insured under FDIC certificate number 35001. *Id.* at 64. On November 14, 2001, Sun National Bank, Delaware merged into and subsequently operated as part of Delaware City Bank in Delaware City. Delaware City Bank was insured under FDIC certificate number 57351. On November 15, 2001, Delaware City Bank merged into and subsequently operated as part of Sun National Bank in Vineland, New Jersey. Thus, when movant robbed the Market Street branch of Sun National Bank on January 24, 2004, the bank was insured under FDIC certificate number 26240. This additional evidence provided by the government supports the branch manager's testimony that Sun National Bank deposits were FDIC insured when movant robbed the branch of the bank located at 1300 Market Street in 2004. (D.I. 84-5 at 63-65)

---

[5]The copy of the information provided by movant appears to have been printed off of the FDIC website. Although not determinative of the instant issue, the court notes that the copy of the website page provided by movant appears to have been "cut and pasted," leaving open the possibility that some of the branch addresses listed on the actual website under "New Castle County" [Delaware] "as of June 30, 2004" were omitted from the copy provided here.

Based on the foregoing, the court concludes that movant has failed to demonstrate that it is more likely than not that no reasonable juror would have convicted him of violating 18 U.S.C. § 2113(a) and (d) (Count I) and the related charges in Counts II and III if presented with his "actual innocence" claim. Consequently, the court concludes that movant's "actual innocence" argument does not provide grounds for equitable tolling.

For the reasons discussed, the court will deny the instant § 2255 motion as time-barred.

## IV.    EVIDENTIARY HEARING

Section 2255 requires a district court to hold an evidentiary hearing on a § 2255 motion unless the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255. As previously explained, the record conclusively demonstrates that movant is not entitled to relief because his motion is time-barred. Therefore, the court will deny movant's § 2255 motion without an evidentiary hearing.

## V.    CONCLUSION

For the reasons stated, the court will dismiss movant's 28 U.S.C. § 2255 motion(s) to vacate, set aside, or correct sentence without an evidentiary hearing. Additionally, the court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2)(A certificate of appealability is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right."); *Slack v. McDaniel*, 529 U.S.

473, 484 (2000); Fed. R. App. P. 22; 3d Cir. L.A.R. 22.2 (2011). The court shall issue an appropriate order.